IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOHN GIVENS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:04-CV-109-F |
| | ) | (WO) |
| CRENSHAW COUNTY | ) | |
| COMMISSION, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Plaintiff John Givens ("Givens") brought this action under 42 U.S.C. § 1983 against Defendants Crenshaw County Commission, *et al.*, alleging violations of his Fourth and Fourteenth Amendment rights under the United States Constitution. An earlier ruling of this Court (Doc. #13) disposed of all claims against all defendants except those against Crenshaw County deputy Chris Giglio ("Giglio") in his individual capacity. This cause is presently before the Court on Giglio's Motion to Dismiss Plaintiff's Amended Complaint (Doc. #18) filed on October 8, 2004. After reviewing the submissions of the parties the Court finds, for the reasons set forth below, that the motion is due to be GRANTED.

### JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343. The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations in support of both.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the *legal* sufficiency of the complaint.  A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations.  *See Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984); *see also Chepstow Ltd. v. Hunt*, 381 F.3d 1077, 1080 (11th Cir. 2004) ("A motion to dismiss may be granted only when the defendant demonstrates beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief") (internal quotations omitted).  In other words, a motion to dismiss only requires a court to determine whether a plaintiff's allegations, if proven, are sufficient to state a recognized claim at law upon which relief can be granted.  In analyzing a motion to dismiss, the Court will accept as true all well-pleaded factual allegations and view them in a light most favorable to the non-moving party.  *See Hishon,* 467 U.S. at 73.

## FACTS AND PROCEDURAL HISTORY

The Court has carefully considered all documents submitted in support of and in opposition to the motion.  The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following facts.

On September 3, 2003, Giglio arrested Givens for driving under the influence and transported him to the Crenshaw County Detention Facility where he was booked into custody.  Givens alleges that while he was at the jail and in handcuffs Giglio sprayed him in the eye with pepper spray and struck him in the eye with the spray's container.  Givens

contends that he was of no immediate threat to Giglio and was defenseless at the time of the altercation.

As a result of the purported attack, the Plaintiff avers that his left eye bled profusely, his vision was impaired, and his face became swollen.  Givens complained of these injuries to Giglio and other members of the jail staff and requested medical attention but alleges that no action was taken to remedy his wounds.  Later the same day, the jail released Givens and he proceeded to obtain medical care for his eye, as it had become swollen shut and begun to secrete a yellowish fluid.  Jackson's Hospital diagnosed the injury as an abrasion of the cornea, which necessitated several visits for follow-up care.

On February 9, 2004, the Plaintiff filed a complaint in this Court pursuant to 42 U.S.C. § 1983 against Giglio in his individual capacity and the Crenshaw County Commission alleging violations of an assortment of rights under the United States and Alabama constitutions.  Both Defendants filed motions to dismiss or alternatively for a more definite statement (Doc. #4 & 6), and on September 7, 2004, the Court dismissed the claims against the Crenshaw County Commission without prejudice and required a more definite statement as to Giglio (Doc. #13).[1]  Accordingly, the Plaintiff amended his complaint to state claims against only Giglio for (1) the violation of his Fourth Amendment rights by the use of excessive force and (2) the violation of his Fourteenth Amendment rights by deliberate

---

[1] The Court's order required a more precise statement from the Plaintiff in order to comply with the Eleventh Circuit's heightened pleading standard in § 1983 actions against officers in their individual capacity.  The Court also dismissed a multitude of state law claims against Giglio.

indifference.  The Defendant subsequently filed his motion to dismiss these claims based on qualified immunity on October 8, 2004 (Doc. #17).

## DISCUSSION

A government official sued in his individual capacity under § 1983 may assert qualified immunity if he was performing a discretionary function. *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004).  "Once the official has established that he was engaged in a discretionary function, the plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity." *Id*.  If the plaintiff fails to furnish sufficient factual allegations at this stage, the defendant officer is entitled to judgment. *See Marsh v. Butler County, Alabama*, 268 F.3d 1014, 1022 (11th Cir. 2001).

In *Saucier v. Katz*, 533 U.S. 194, 201 (2001), the Supreme Court delineated a two-step analysis for determining whether an officer is eligible for qualified immunity.  The initial inquiry focuses on whether the plaintiff's allegations, if considered true, show that the officer violated a constitutional right. *Id*.  The absence of a constitutional violation ends the inquiry. *Id*.  However, where a court does find an officer acted in an unconstitutional manner, the analysis turns to whether the right was clearly established so that the officer had fair warning that his conduct was constitutionally prohibited. *Id*.

Qualified immunity is "an immunity from suit, rather than a mere defense to liability" and, as such, provides eligible officers an "entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  Like absolute

4

immunity, this privilege "is effectively lost if a case is erroneously permitted to go to trial." *Id*. Thus, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage of litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

To accomplish this result, some courts have utilized a heightened pleading standard in cases where an officer asserts qualified immunity. Despite the Supreme Court's disavowal of a heightened pleading standard for cases against municipalities, the Court has expressly reserved judgment on the applicability of such a standard in qualified immunity cases. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166-67 (1993) ("We thus have no occasion to consider whether our qualified immunity jurisprudence would require a heightened pleading in cases involving individual government officials."). Correspondingly, the Eleventh Circuit has continued to require an increased level of specificity in § 1983 complaints brought against individual defendants. The Court of Appeals has justified this approach by reference to the intricacies presented when a defendant asserts a defense of qualified immunity and the court's need for specific facts when "weed[ing] out nonmeritorious claims."[2] *GJR Invests., Inc. v. County of Escambia*,

---

[2] The Eleventh Circuit also follows a rule whereby prior decisions of a panel may not be overturned except by the Court sitting en banc or by the Supreme Court. *Swann v. So. Health Parts., Inc.*, 388 F.3d 834, 837 (11th Cir. 2004). Additionally, intervening decisions of the Supreme Court will not overrule prior cases unless clearly on point. *Id*. Thus, the Eleventh Circuit has found the situation in qualified immunity cases sufficiently different from the situation present in *Leatherman* to justify the maintenance of the heightened standard. *Id*. Several other circuits have applied a similar standard in qualified immunity cases. *See, e.g.*, *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994); *Lee v. City of Los Angeles*, 250 F.3d 668,

132 F.3d 1359, 1367 (11th Cir. 1998).[3]

"Once the defense of qualified immunity is advanced, the allegations of the complaint take on great importance in a lawsuit." *Marsh*, 268 F.3d at 1022.  The heightened pleading standard requires the plaintiff to "allege the relevant facts with some specificity," because a "complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (citations and internal quotations omitted).  Such a showing allows the court to examine the factual details of the case in order to "see that the allegedly violated right was clearly established when the allegedly wrongful conduct occurred." *Danielle v. Adriazola*, 284 F. Supp. 2d 1368, 1375 (S.D. Fla. 2003) (quoting *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992)).

Givens has brought claims of excessive force and deliberate indifference against Giglio to which the Defendant asserts a defense of qualified immunity.  The Court will address each allegation in turn, considering them in light of the more exacting pleading standard applicable in this case.

---

679n.6 (9th Cir. 2001); *Kartseva v. Dept. of State*, 37 F.3d 1524, 1530 (D.C. Cir. 1994).

[3] Although this case appeared to signal the possibility of a wider application of the heightened pleading requirement than perhaps permissible in light of Supreme Court precedent, subsequent Eleventh Circuit decisions have properly recognized that *GJR* involved only the standard utilized in qualified immunity cases and, thus, speaks only to such instances.  *Swann*, 388 F.3d at 837.

**A. Fourth Amendment**

The Fourth Amendment has been interpreted to include the right to be free from the use of excessive force by officers during an arrest.[4]  *See Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002).  While it is imperative that law enforcement have the ability to use physical force or coercion when effecting an arrest, this interest must be balanced against the Fourth Amendment protections afforded individuals against unreasonable searches and seizures.  *Graham v. Connor*, 490 U.S. 386, 396 (1989).  The Fourth Amendment analysis of excessive force is one of reasonableness, "that is, if an objectively reasonable officer in the same situation could have believed that the force used was not excessive," qualified immunity will apply.  *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1248 (11th Cir. 2004).  To make this determination, courts "are not to view the matter . . . from the comfort and safety of [judicial] chambers, fearful of nothing more threatening than the occasional paper cut."  *Crosby*, 394 F.3d at 1333-34.  Instead, the inquiry must examine "the situation through the eyes of the officer on the scene who is hampered by incomplete information and forced to make a split-second decision."  *Id*.

Here, the complaint alleges that Defendant Giglio violated the Plaintiff's Fourth

---

[4] The Court analyzes the excessive force claim under the Fourth Amendment because that is how it has been pleaded by the Plaintiff, and the Defendant has raised no objection to such an approach.  However, the Court believes it possible that the proper framework may be under the Fourteenth Amendment if Givens was a pretrial detainee rather than an arrestee.  *See Lancaster v. Monroe County, Alabama*, 116 F.3d 1419, 1425 (11th Cir. 1997); *Crosby*, 394 F.3d at 1333. The lack of details in the Plaintiff's complaint makes it impossible for the Court to definitively determine this question; thus, the Court will follow the approach of the parties and consider Givens an arrestee.

Amendment rights by spraying him in the eye with pepper spray and striking him with the spray's container while he was handcuffed.  These scant details are perhaps the beginning of a proper recitation of the minimal facts necessary to survive a 12(b)(6) motion but, in the § 1983 context, are insufficient to provide any context or details that would allow the Court to compare the case at bar with previous police actions found to violate the constitutional provisions in question.  The Plaintiff's careful avoidance of any substantial facts concerning the incident border on flagrant omissions.  For instance, the complaint states that Givens was "in custody" and "under arrest" when the altercation occurred and that Giglio was in "no imminent danger."  However, the plaintiff fails to adduce any further factual context for the Court to perform the fact-intensive qualified immunity analysis or to evaluate the totality of the circumstances in the light of the relevant constitutional background.

The amended complaint supplies almost no additional details to improve the factual account this Court found not to state a cause of action in the Plaintiff's initial complaint (Doc. #13).  Indeed, the Plaintiff has merely supplemented the mixture of vague allegations and conclusions of law of his original pleading with further description of his injuries. "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant is entitled to dismissal before the commencement of discovery." *Marsh*, 268 F.3d at 1022 (quoting *Mitchell*, 472 U.S. at 526).  Therefore, the Court concludes the Plaintiff has failed to plead a cause of action for excessive force, and this claim is due to be dismissed.

Moreover, the Court finds the Plaintiff's complaint fails to make out a constitutional

violation in the few facts it does provide.  Courts reviewing similar allegations have dismissed the plaintiff's complaint and found the actions of law enforcement officers reasonable where an arrestee is handcuffed and not "imminently dangerous," yet non-compliant.[5]  *See, e.g.*, *Gainor v. Douglas County*, 59 F. Supp. 2d 1259, 1287-88 (N.D. Ga. 1998) (granting summary judgment on excessive force claim where handcuffed plaintiff was sprayed with pepper spray); *Griffin v. City of Clanton*, 932 F. Supp. 1359, 1369 (M.D. Ala. 1996) (same).  Thus, the application of the qualified immunity defense at the 12(b)(6) stage is appropriate in order to "resolv[e] the immunity question at the earliest possible stage in the litigation" *Hunter*, 502 U.S. at 227, and to spare state officials the costs of discovery where a clear constitutional violation has not been established.  *See Harlow v. Fitzgerald*, 470 U.S. 800 (1982); *see also Marsh*, 268 F.3d at 1022 ("We have applied the qualified immunity defense at the 12(b)(6) stage before.").

**B. Fourteenth Amendment**

An officer violates a pretrial detainee's "Fourteenth Amendment right to due process if he acts with deliberate indifference to the serious medical needs of the detainee."[6] *Lancaster*, 116 F.3d at 1425.  "More specifically, the case law [has] made  it clear that an

---

[5] The assertion that Givens was compliant with deputy Giglio's orders is conspicuously absent from the Plaintiff's pleadings.

[6] Although the source of the right to medical treatment for a convicted offender derives from the Eighth Amendment, as compared to the Fourteenth Amendment for a pretrial detainee, the minimum standard under both provisions is the same.  *Lancaster*, 116 F.3d at 1425n.6 (citing *Hamm v. DeKalb County*, 774 F.2d 1567, 1573-74 (11th Cir. 1985)).

official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." *Id*. (citing *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1186 (11th Cir. 1994)).  This standard encompasses both an objective and subjective component. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).  To make a showing of objective indifference, the plaintiff must demonstrate (1) a serious medical need "that, if left unattended, poses a substantial risk of serious harm" and (2) "that the response made by public officials to that need was poor enough to constitute an unnecessary and wanton infliction of pain." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000).  In addition, the plaintiff must show (1) a subjective awareness on the part of the officer of the facts from which an inference could be drawn that a serious risk of harm exists and (2) that the officer did in fact draw the necessary inferences and was aware of the risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

The Eleventh Circuit has divided these four elements into a two-part analysis.  First, the court determines whether there was a serious medical need. *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995); *see also Farrow*, 320 F.3d at 1243.  Then, if such a need is found, the court evaluates the allegations of deliberate indifference. *Adams*, 61 F.3d at 1543.

1. *Serious Medical Need*

A "serious medical need is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity [of] a doctor's attention." *Farrow*, 320 F.3d at 1243. (citation and internal

10

quotations omitted).  Here, there is no question the injury Givens sustained to his eye was of a serious nature and that extensive treatment was needed.

    2.  *Deliberate Indifference*

Once a serious medical need is established, the plaintiff must demonstrate that (1) the officer had a subjective appreciation of the risk of harm, (2) the officer intentionally disregarded this risk, and (3) the conduct of the officer went beyond mere negligence. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).  The first two factors delve into the subjective awareness and intent of the officer, whereas the third ensures that instances of medical malpractice do not rise to the level of constitutional violation.  *See Estelle v. Gamble*, 429 U.S. 97, 105 (1976).

As before, the Court's qualified immunity analysis in this context runs up against the dearth of factual detail in the Plaintiff's complaint.  Despite the Court's prior admonition, the Plaintiff has again pleaded vague and conclusory allegations regarding the incident in question.  An examination of the complaint reveals only that the Plaintiff incurred an injury to his eye and subsequently requested medical treatment.  Absent are any particulars concerning the length of time the Plaintiff remained in custody, how long after he made his medical requests he was released, and the extent to which his injuries were increased by the delay in treatment.  Without these facts, the Court is unable to make the essential constitutional determinations about the Defendant's conduct.  Therefore, the Court must also dismiss this claim, as its factual allegations fall well short of the degree of specificity

required in a § 1983 complaint to overcome the defense of qualified immunity.

## CONCLUSION

For the foregoing reasons, it is hereby  ORDERED as follows:

1.      The Motion to Dismiss filed by Defendant Chris Giglio (Doc. #18) is

GRANTED.

2.      Defendant Chris Giglio is hereby DISMISSED WITHOUT PREJUDICE from

the above-styled case, costs taxed as paid.

DONE this 21st day of October, 2005.


_____/s/ Mark E. Fuller_____
CHIEF UNITED STATES DISTRICT JUDGE